UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF FLORIDA

Civil Action No. _____

PETER LETTERESE,
BARBARA FAWCETT,                          )
               Petitioners,          )
                                          )
vs.                                       )
                                          )
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
               Respondent.           )
_____)

## PETITION TO QUASH SUMMONS

Petitioners, PETER LETTERESE and BARBARA FAWCETT, file this Petition to Quash Eight (8) Internal Revenue Service Summons', and as grounds therefor does state:

    1.    This Court has jurisdiction pursuant to Internal Revenue Code Section 7609(h), namely, that the Summons is returnable in this District, as well as 28USC 1331 and 1346.

    2.    Venue is proper in this court pursuant to 28 USC 1396.

    3.    Petitioner, PETER LETTERESE, 14581 Old Sheridan Street, Southwest Ranches, FL 33330, received, by certified mail on March 26, 2011 notice that six (6) Internal Revenue Service Summons', Forms 2039, were issued to Bank of America,

Community Bank of Broward, Regions Bank, Wachovia Bank, Amsouth and Equifax Credit Bureau, all of which seek records pertaining to him.

Copies of each summons are attached as Exhibits 1-6.

4. Petitioner, BARBARA FAWCETT OF 18031 SW 70th Place, Southwest Ranches, FL 33331 also received, by certified mail on March 23rd, 2011 and notice that two (2) Internal Revenue Service Summons', Forms 2039, were issued to Wachovia Bank, and Equifax Credit Bureau, all of which seek records pertaining to her. Copies of each summons are attached as Exhibits 7-8.

5. Such summons' demand collectively the production of 8 categories of extensive records from five (5) banks and a credit reporting agency, six for Petitioner Letterese, two for Petitioner Fawcett. Special Agent Liliana Nin had already summoned and reviewed the records from the same banks for tax years 2006-2008. In a prior discussion with undersigned counsel, Ms. Nin had said she was "only interested" in the years 2007-2009.

6. The records provided no basis for continuing this Criminal Investigation ("CI"). Ms. Nin had summoned Petitioners to provide detailed documentary information by March 4, 2011, which they did; and appear for questioning, which they did.

7. The very next day, March 21, 2011, she caused these new summons' to be issued.

8. Petitioners, (by and through counsel have offered through counsel to discuss their case in detail with IRS, if IRS would roll the Criminal Investigation back to an audit. Petitioners suggested that if upon completion of the audit the IRS believed they have the basis for referring the case to CI the designated IRS Auditor could do so, armed with his/her findings. This case did not come to CI, through "normal channels"[1], from, an auditor, but upon information and belief from counsel (Alan Perlman, formerly of now defunct Adorno & Yoss, LLC and now relocated at the law firm Roetzel & Andress), and personnel associated with the Church of Scientology, as alluded to in open court during Petitioner's bankruptcy proceeding.[2] The fact that Petitioner s

---

[1] This was determined by the Petitioners consulting FOIA documents obtained by Petitioners only after an arduous more than one-year effort to exercise their rights to acquire the contents of their IRS files. Voluminous documentation was provided to IRS Disclosure, a lawsuit had to be filed at one point and generally there was a discernible level of stonewalling on both time and content. Petitioners through discovery would like to determine why this case arose. Was it because the lawyer for Scientology (Perlman) turned them in via false reports in a pre-arranged deal? Was it because other lawyers related to the Bankruptcy action turned them in via false reports in a pre-arranged deal? Was it because other Scientology lawyers (e.g., Moxon or Helena Kobrin), both of whom were admitted into the Bankruptcy action (despite the pre-existing appearance by Perlman on behalf of the two Scientology corporations), who conspired with Perlman and/or other attorneys to turn them in via false reports, in a pre-arranged deal? Petitioners believe they have a right by law to this discovery prior to their requested evidentiary hearing, which they are seeking via this Petition. Only through discovery can the Petitioners get to the truth. The Court is asked to take close notice of that Petitioners have disclosed to IRS on numerous occasions, the fact that approximately 14,000 pages of documents were turned over to Perlman in the course of the Bankruptcy proceeding, yet IRS never asked for them, while simultaneously taking a year to produce documents to which Petitioners were entitled. Petitioners even offered to fully discuss everything with IRS if they would roll this case back to an audit. Then, if through normal channels, IRS auditors thought this case should be referred to criminal, they could (of course) do so. It appears that IRS did/does not want 14,000 pages of documents or the cooperation of Petitioners. That is because Petitioners, upon information and belief, recognize that certain individuals within the IRS are serving a different master. This is a pure and, anything but simple, extraordinarily elaborate case of IRS harassment and collusion with a civil litigant posing (through its attorney, Perlman and perhaps other attorneys), as an authorized source for the determination of guilt for tax evasion; a curious self-appointed authority, given the one-of-a-kind nature of Scientology's own 1993 acquired tax exemption.

[2] During Oct-Nov 2009 discussions about the purchase of the Corporate Chapter 7 Assets in the Creative Desperation, Inc. Bankruptcy, CASE NO. 08-019067-JKO, before The Honorable John K. Olson presiding, Perlman, in opposition to the purchase, declared to the Court, without so much as a scintilla of evidence, that

are involved in protracted litigation against the Church of Scientology is no surprise to the IRS.[3] The fact that IRS took the ball from Mr. Perlman for the Church of

---

the Petitioners in the instant matter were "tax evaders" (offering neither valid-by-statute proof nor any finding of the IRS to back his assertions). Perlman argued, at the same Late October- Early November 2009 Bankruptcy hearing that the Bankruptcy Court should not accept Letterese's offer of $1.6 million to purchase his litigation rights from the Trustee, because of this purported tax evasion, despite the fact that Scientology's debts in the Bankruptcy were but 8% of the total listed indebtedness. Much of this $1.6 million (of which $250,000 was paid in mid-November 2009 by Letterese) would have been used to pay a Scientology judgment (never perfected in Florida) against Letterese's former corporation, Creative Desperation, Inc.(" CDI"). Thus, Perlman was arguing against his own client's only legitimate interest for being in Bankruptcy Court (to get its purported debt paid). In fact, Petitioners believe there was and remains an ulterior motive for Perlman appearing on behalf of two Scientology corporations (Church of Scientology International and Bridge Publications, Inc.) in the CDI Bankruptcy Court. Perlman, in the aforementioned depositions, asked numerous questions that were of no benefit to his clients as creditors in the Bankruptcy court, but were only relevant (though unexpected and undetected at the time by Petitioners, as ensuing events have demonstrated), to inciting a potential, pre-planned and pre-meditated future criminal tax investigation of Letterese and Fawcett, on information and belief, through Perlman's and Scientology's own covert "agent(s)", personnel employed in fact by the IRS, nevertheless working inside the CID Miami IRS Office on Scientology's behalf. Petitioners also believe other attorneys connected to the Bankruptcy illegally communicated with IRS personnel. (Note: This is not the first time Scientology has infiltrated a Government Agency. In fact, its founder's wife and 8 others were found guilty and went to Federal Prison in 1977 for dozens of infiltrations, not unlike those believed to have occurred here. Note: The Scientology lawyer sitting next to and directing Perlman in the aforementioned Bankruptcy related depositions of 2009, was attorney Kendrick Moxon, himself an unindicted co-conspirator in the 1977 federal case. Scientology agreed to admit Moxon's participation in the conspiracy acts (including submitting a false handwriting sample to the FBI), which sent Mary Sue Hubbard and 8 others to jail in 1977 in exchange for being left out of the indictment, because had he also been convicted, Moxon would not have been able to continue to act as Scientology had planned from then until now, and which multiple Scientology senior executives have caused to occur in every single one of all of the intervening years, as their attorney, in the United States and Internationally in dozens, and perhaps hundreds of locations on behalf of multiple Scientology corporations in multiple lawsuits and criminal actions on behalf of the Church, if he had suffered a felony conviction on his record. No plea bargain for Hubbard's own wife was as strenuously pursued, according to information and belief. Within days, after no contact for over 3 years, IRS suddenly commenced a Criminal Investigation first against Petitioner Fawcett. Soon after, it added Petitioner Letterese. FOIA Documents obtained show both documents in existence AND documents withheld (under IRS Exemption Rules) which indicate the presence of sudden and unexplained letters to the IRS from an outside source. Petitioners are separately appealing the exemption of those documents congruent with this Petition to Quash Summons on the grounds herein cited.

[3] Petitioners originally filed for a Chapter 11 Reorganization for their Corporation in July 2008. When Scientology made clear, August-Sept 2008, in court documents and hearings that they intended to pressure the Court to convert this case to a Chapter 7 (because primary assets of the Debtor included a $250 million Civil RICO Case against them plus a contemporaneous $250 million suit for due process denial; Scientology hoping

to avert having to face these claims). Petitioners, whose intent was indeed to reorganize their business, which had been destroyed by a far-flung, cross-continent conspiracy by this very same Scientology conglomerate (outlined in detail in the very same RICO complaint), were so committed to this reorganization that they instructed counsel noted below and their Bankruptcy Counsel, Charles Franken, esq., to meet in person with IRS officials at the Plantation, FL office in the hopes of gaining support from the IRS to avert the conversion. (Note: Petitioners have had a disputed tax bill dating back to 1997, which they believe they have paid not once but twice in fact in full to the IRS, but which they planned by virtue of their reorganization to pay off and then dispute to a resolution and refund, etc.) Their request for help from the IRS was in this pursuit. Notes from that meeting were finally obtained in Dec 2010 under the FOIA Legislation after a one-year delay, documenting that IRS Bankruptcy Specialist, Earline Session on 9-8-2008, made an entry into the file concerning this meeting, saying there'd be no need for the IRS to so appear as Petitioners were requesting, since from a review of the docket, she strongly believed that no conversion would/should take place. Yet, under the pressure of Perlman for Scientology, a conversion did take place. Note at this time, in an adversary matter related to this Bankruptcy, Adv. Case No. 09-01649-BKC- JKO-A, Petitioners have for a second time requested the recusal of The Honorable Judge Olson for reasons cited in the attached Motion and Affidavit so requesting, which are attached as Exhibits 12 & 13; which interlock and cross-reference the elements of the instant Petition. Taken together with the information obtained under the FOIA Legislation, there appears a clear path between Mr. Perlman and other lawyers involved in the Bankruptcy case and the harassment detailed in this Petition. Petitioners, to say it plainly believe there has been bad faith as well as illegal and improper complicity between the parties and entities herein described. Petitioners believe that through discovery they are likely to prove that Perlman, and other bankruptcy connected attorneys, and IRS personnel, were working together, not for the legitimate purpose of collecting money to satisfy their respective claims in bankruptcy, but instead their joint goal, which was to harass Mr. Letterese and prevent him from proceeding with his $500 million (combined) RICO & due process lawsuits against Scientology and its surrogates. And further, to force him to either remain protractedly in Bankruptcy and/or be dismissed from it without discharge (the latter in fact, occurred). This labyrinthine cloak and dagger strategy was meant to leave the Bankruptcy estate, including the amount demanded as owed by the Internal Revenue Service without full payment but tilted toward the desired ends of Perlman's clients. All of this was intended, as shown recently in an Adversary case [Adv. Case No. 09-01649-BKC-JKO] proceeding from this Bankruptcy Case [CASE NO. 08-019067-JKO Chapter 7]. Petitioners had no concerns as to any criminal wrongdoing, no intent, so even though represented by counsel, proceeded to answer questions, in purported to be Bankruptcy related depositions. Had they been provided notice by the IRS that Perlman was actually a foil for the criminal investigation division of the IRS, they would have had the opportunity to assert their 5th Amendment rights. Without notice they had no such opportunity. It is the strong contention of the Petitioners that testimony by Letterese and Fawcett was "compelled" (as that term is used in the 5th Amendment to the U.S. Constitution), by trick or subterfuge. The elicited testimony, perhaps against their own interest was poisoned by the conspiring parties, creating a "fruit of the poisoned tree" result. Petitioners believe that Perlman was already in contact with IRS personnel prior to this Bankruptcy court hearing; that his questions and reporting Petitioners to the IRS were not to increase the Bankruptcy estate, but to throw additional obstacles in Mr. Letterese's actions against Scientology, and to maneuver Mr. Letterese into a position by and through which he could be made to relinquish his power of attorney obligations with respect to the Dane Estate (on behalf of the published and unpublished works of deceased author, Les Dane), or by and through which Thomas Karas, via his Corporation, MGSI Inc. the holder as of 2006 continuing into 2009, of the exclusive marketing rights (on behalf of the published and unpublished works of deceased author, Les Dane) to relinquish respectively, his corporation's rights. Further

Scientology and other lawyers (both from FOIA Records and upon information and belief), and "ran with it", is why Petitioners call into question the motives of the government and its relationship with the Church of Scientology. The more the government tries to sink its teeth into Petitioners without taking the more normal and typical path of commencing an audit first (especially given Petitioners' agreement to answer

---

evidence of this intent is the current "Motion to Approve Sale and Purchase of License Agreement before this very Bankruptcy Court by Trustee Attorney (Genovese Joblove Battista Partner) Barry Gruher, in which Gruher claims the right to sell this exclusive marketing agreement on behalf of Successor Trustee Barry Mukamal, prior to any substantive commencement, let alone completion of the adversary litigation which Gruher, upon information and belief, is bringing not as advertised at the behest of the successor trustee, Barry Mukamal (as stated in Gruher's Motion), but de facto on behalf of the two Scientology corporations, the aforementioned Scientoloy and Bridge publications, Inc. Making this effort even more egregious is that although these two Scientology corporations purport to be operating in accordance with the 501(c)(3), non-profit designation they acquired in 1993, under the private inurement and private benefit doctrines of the Internal Revenue Code are, and have been, for between 10 and 17 years via both covert economic attacks on Petitioners and their corporations via the internet, as well as ongoing predatory litigation against Petitioners, pursuing for-profit aims and objectives, illegally. The Marketing Agreement (a completely for-profit license in which for-profit income generated for the Dane Estate is the primary objective), which they are attempting to purchase through the transparent naming of one and the same Alan Perlman as Trustee for purposes of the purchase. On information and belief, this is a budding conspiracy to defraud the IRS of truly owed tax dollars, not by Petitioners, but by multiple U.S. Scientology corporations. Noteworthy is that these two Scientology corporations, among others, in a prior copyright infringement lawsuit, brought before now retired Judge Paul Huck in the U.S. District Court, Southern District of Florida, claimed during that litigation and subsequently to have spent in excess of $1.5 million in legal fees. These fees, amount to the Scientology corporations' use of tax-free dollars to pursue a for-profit contract. Additionally noteworthy is that in early 2010, through various maneuvers in the aforementioned CDI Bankruptcy case, this Bankruptcy Court permitted the same two Scientology corporations to buy for-profit litigation claims owned by CDI (which is owned by shareholders Barbara Fawcett and Peter Letterese, Petitioners in the instant action). Hence, Petitioners, upon information and belief, intend to prove the criminal investigation of Petitioners has been annexed as part of an elaborate scheme to lay the groundwork for the conversion of the rights of the Dane Estate, all without the Dane estate's voluntary participation, permission or receipt of the millions of dollars in compensation, which it is owed due to royalty fraud by these same Scientology corporations and their sister churches. Relevant to the above points, is the fact that it took Petitioners about a year to acquire aforementioned documents, which they had a right to see, under the Freedom of Information Act ("FOIA"), from the IRS. Interestingly, some of these documents provided were not provided, i.e. withheld, in 2005 in response to a very similar FOIA request. Further, many relevant documents were redacted, and others exempted entirely, due to alleged statutory rights accruing to the IRS, while conducting a fishing expedition such as the one described herein.

every question if the case were properly redirected which it should have been in the first place)[4], the more it seems evident that Scientology is behind it.

9. During the course of discussions between Special Agent Nin and undersigned counsel, at a point when the acquisition by Petitioners of the documents requested by IRS, were in late 2010-early 2011 in doubt due to storage misplacements, I informed Ms. Nin, that if she is actually looking for information, Petitioners, by order of the Bankruptcy Court, had turned over what was estimated from memory to be as many as 14,000 pages of documents to Church of Scientology Creditor Bankruptcy counsel Alan Perlman. Additionally, I had written to Mr. Perlman directly, on October 6, 2010 requesting that he voluntarily copy at Petitioners' expense to be paid in advance of his incurring any costs, turn over these records, but he ignored my request, never replying either in the positive or the negative. A copy of such

---

[4] Very Noteworthy is the fact that the alleged issues that Ms. Nin has informed Petitioners' counsel, are "under review" here by CID may be described accurately by all the following descriptives: A) They do not refer to any "criminal behavior" that undersigned counsel is aware of as designated "criminal" by the IRS Code, nor that Ms. Nin has identified either in deliberations with Petitioners' counsel or in her inquiries on March 21, 2011 when Petitioners appeared ... (Note: Petitioners believe Perlman and other lawyers meant to cast them in a "criminal" light using the IRS as its foil possibly through an inside agency employee acting as a "mole", to try to benefit Scientology in pursuit of its desired outcome in the aforementioned Bankruptcy and Adversary cases – see Attached Affidavit of Petitioner Letterese); B) Their allegedly "under investigation" actions were fully described in detail in person in undersigned counsel's presence to IRS Plantations Office Collections Officer aka William Smith in 2005 – and was never again challenged nor mentioned by him to counsel thereafter, including extensive notes in the FOIA records obtained which show "the Collection Case" had subsequently been "closed" prior to Fall 2009. Petitioners believe Perlman and other lawyers used "inside influence" to "re-open the case". It should be noted the Scientology Executive directly supervising Perlman in person at almost every Bankruptcy Hearing, and present in person, supplying Perlman with questions; in the Bankruptcy depositions which immediately preceded by a handful of days only, the "investigation" of Petitioners commenced in late 2009, is one Attorney Kendrick Moxon of Los Angeles, California who was formally named as an unindicted co-conspirator in 1977 for having lied to the FBI and presenting it with false evidence, in a criminal case which sent Scientology's Founder Hubbard's wife (Mary Sue Hubbard) and 9 other Scientology top-level personnel to Federal Prison for infiltrating dozens of Government agencies and stealing real, and inserting false documents from and into U.S. government files!

request is attached as Exhibit 9. I wrote to Mr. Daniel W. Auer, Special Agent in Charge, of the South Florida Criminal Investigations Division, on November 4, 2011, pointing these same issues out. A copy of the letter to Mr. Auer is attached as Exhibit 10. Mr. Auer also did not respond to my request that these records be summoned from Mr. Perlman. To date the 14,000 pages of documents in the hands of Mr. Perlman have never been summoned by IRS.

10. I sought to inform Mr. Maurice Forbes, Ms. Nin's manager of Ms. Nin's bias against Mr. Letterese, but he ignored my numerous telephone calls. I wrote to Ms. Kimberly Lappin, Mr. Forbes manager, on April 6, 2011 to inform her of my concerns. To date I've not received a response. A copy of such letter is attached as exhibit 11.

11. This case is not a simple matter. The protracted litigation between the Petitioners and Scientology included Scientology's claims in the aforementioned Bankruptcy cases. In the course of this litigation, and on information and belief of Mr. Letterese, Mr. Perlman and other lawyers, as counsel for the Church of Scientology, provided false and misleading information through its sympathetic internal sources, within IRS, to pressure CI to investigate Mr. Letterese, and related parties. It has long been believed by Mr. Letterese and many other reputable people, that Scientology and the IRS made an inappropriate and illegal deal in which Scientology was granted Section 501(c)(3) status as a qualified charitable organization, and further, that Scientology still, through individuals like Attorney Kendrick Moxon and ever since that (upon information and belief) pressuring/possibly-rising-to-the-level-of-extorting that 1993 One-Of-A-Kind Federal Tax Exemption, has maintained inappropriate and illegal contacts within certain individuals within and unknown to the majority of the honest and loyal employees of IRS, with and upon whom they

enjoy and can and do exert undue influence.

12. In *U.S. v. Equitable Trust Cn.*, 611 F.2d 492(4th Cir. 1979), the court held that a person named in a summons could challenge the good faith of IRS in its investigations.

WHEREFORE, Petitioner prays this Court:

(1) to quash the IRS summons' served on the five (5) banks and one (1) credit reporting agency for both Petitioners, and

(2) grant other and further relief as this Court may deem just and proper.

Dated: July 14, 2011
Hollywood, FL

Respectfully submitted,

IRA L. ZUCKERMAN
(402702)
Taxmaniandevil@bellsouth.net
Ira L. Zuckerman, P.A.
601 S. Ocean Drive
Hollywood, FL 33019
Phone (954)922 1975
Fax (954)922-1976
Attorney for Petitioner

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by U.S. Mail, certified/return receipt requested on July 15, 2011 on all counsel or parties of record on the attached service list.

IRA L. ZUCKERMAN, P.A.

By _____

IRA L. ZUCKERMAN

## SERVICE LIST

Civil Action No. _____

Eric H. Holder
U.S. Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington DC 02530
(202) 514-2001 (main)
(202) 307-6777 (fax)

Commissioner of Internal Revenue
Attention: CC: PA: Br 6/7
1111 Constitution Avenue, NW
Washington, DC 20224

Wifredo A. Ferrer, Esq.
United States Attorney
Office of the United States Attorney
for the Southern District of Florida
500 E. Broward Blvd.
Ft. Lauderdale, Fl. 33394
(954) 356-7255
Fax (954) 356-7336

Liliana Nin, Special Agent
Internal Revenue Service
51 SW 1st Avenue
Room 931, Box 60
Miami, FL 33130
(305) 982-5357
Fax (305) 982-5249